UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JACE BOSTON, LLC, and ARTHUR LEON, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:21-cv-11120-IT |
| LANDMARK AMERICAN INSURANCE COMPANY, AMERICAN SAFETY INDEMNITY COMPANY, FIRST MERCURY INSURANCE COMPANY, and NAVIGATORS SPECIALTY INSURANCE COMPANY, | * * * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

December 1, 2021

TALWANI, D.J.

Plaintiffs JACE Boston, LLC, and its owner, Arthur Leon (collectively, "JACE"), filed this action seeking a declaration that Defendants Landmark American Insurance Company ("Landmark"), American Safety Indemnity Company ("American Safety"), First Mercury Insurance Company ("First Mercury"), and Navigators Specialty Insurance Company ("Navigators") (collectively, "insurance companies") each have a duty to defend or indemnify them in an underlying state court action. Compl. ¶¶ 33-35 [#1-1]. JACE also brought a breach of contract claim against the insurance companies based on their alleged failure to provide a defense and indemnification. Id. at ¶¶ 36-40.

Now pending before the court are the insurance companies' Motions to Dismiss [#18, #21, #23, #26] and JACE's Cross-Motion for Certification to the Supreme Judicial Court [#30].

For the following reasons, the insurance companies' motions are GRANTED, and JACE's cross-motion is DENIED.

I. Background

A. *State Court Litigation*

This matter has a protracted history that encompasses multiple state court actions. Briefly, the relevant background, which is drawn from both the Complaint [#1-1] and the related state court matters, is as follows.

JACE owns a property located in Boston's South End. 477 Harrison Ave., LLC v. Jace Bos., LLC, 477 Mass. 162, 164, 74 N.E.3d 1237 (2017). In December 2011, 477 Harrison Ave., LLC ("477 Harrison") purchased an abutting property, intending to redevelop it for mixed residential and commercial use. Id.

In early 2012, 477 Harrison sought zoning relief with the Boston Zoning Board of Appeal ("ZBA"), requesting variances and special use permits to convert 477 Harrison's abutting property to include several penthouse units. Id. at 165. Leon's attorney contacted the ZBA to oppose 477 Harrison's requested zoning relief, but the ZBA unanimously voted to grant the variances and permits. Id. JACE appealed the ZBA decision to Suffolk Superior Court ("2012 zoning appeal") in August 2012. Id.; see JACE Boston, LLC v. City of Boston Zoning Board of Appeal, et al., No. 1284CV03241 (Mass. Super. Aug. 29, 2012). While the 2012 zoning appeal was pending, JACE sued 477 Harrison for declaratory judgment regarding rights to the properties' shared wall ("2013 declaratory judgment action"). See JACE Boston, LLC v. Holland Development LLC, et al., No. 1384CV02167 (Mass. Super. Jun. 13, 2013).

With redevelopment stalled by these two matters, in September 2013, 477 Harrison filed a new development proposal, which omitted the penthouses and required only a conditional use permit rather than zoning relief. 477 Harrison, 477 Mass. at 165 & n.6. 477 Harrison obtained

the permit in October 2013, and JACE promptly appealed. Id. at 165. However, with the permit in hand, 477 Harrison informed JACE that it intended to begin work on the shared wall in November 2013. Id. JACE immediately sought a preliminary injunction to prevent the construction, but a Superior Court judge entered an order allowing 477 Harrison to remove the undisputed portions of the shared wall. Id. at 165-66. Boston's Inspectional Services Department also issued 477 Harrison a permit allowing it to trespass on JACE's property for the purpose of protecting JACE's roof during the authorized removal of the shared wall. Id. at 166.

In January 2014, 477 Harrison informed JACE in writing of its intention to begin construction, attaching the permit, the Superior Court order, the project plans, and an insurance certificate. Id. 477 Harrison also provided notice to the Boston police department of its intention to enter JACE's property, attaching a copy of the Superior Court order. Id. JACE immediately filed a motion for a preliminary injunction to enjoin 477 Harrison from entering onto the property, which a Superior Court judge denied. Id. The judge also issued an order affirmatively granting 477 Harrison the right to trespass on JACE's property to protect it from possible damage during the demolition. Id.

In September 2014, a Superior Court judge resolved the 2013 declaratory judgment action in favor of JACE, ruling that based on an agreement between the properties' previous owners, 477 Harrison could not remove the disputed portion of the shared wall. Id. at 165. That December, Leon filed an application for a criminal complaint alleging that 477 Harrison's manager, John Holland, had illegally trespassed on his property ("2014 application for a criminal complaint"). Id. at 166. After a hearing in Boston Municipal Court, a clerk magistrate found insufficient probable cause to support the charge and dismissed the complaint. Id.

On March 23, 2015, 477 Harrison filed a complaint in Suffolk Superior Court, claiming abuse of process and a violation of Mass. Gen. Laws ch. 93A ("underlying action"). Compl. ¶ 22 [#1-1]; see 477 Harrison Ave., LLC v. JACE Boston, LLC and Arthur Leon, No. 1584CV000829 (Mass. Super. Mar. 23, 2015). The abuse of process claim was based on (1) the 2012 zoning appeal; (2) the 2013 declaratory judgment action; and (3) the 2014 application for a criminal complaint. Compl. ¶ 24 [#1-1].

Meanwhile, in January 2015, 477 Harrison again sought zoning relief from the ZBA to construct penthouses on its property. Id. JACE opposed the relief, the ZBA granted it, and JACE again appealed the ZBA's decision to Suffolk Superior Court ("2015 zoning appeal"). Id.; see JACE Boston, LLC v. City of Boston Zoning Board of Appeal et al., No. 1584CV01585 (Mass. Super. May 28, 2015). 477 Harrison then amended its complaint in the underlying action, adding allegations related to the 2015 zoning appeal in support of its abuse of process claim. Compl. ¶ 26 [#1-1].

B. *Insurance Policies*

Throughout these events, JACE has been insured under commercial general liability policies issued by four different insurance companies. Landmark insured JACE from January 1, 2012, to January 1, 2013; American Safety from January 1, 2013, to January 1, 2014; First Mercury from January 1, 2014, to January 1, 2015; and Navigators from January 1, 2015, to January 1, 2016. Id. at ¶¶ 12, 14, 16, 18. All four policies were materially the same and provided coverage for "personal and advertising injuries," including "malicious prosecution." Id. at ¶¶ 12-13, 20.

In 2015, when 477 Harrison initiated the underlying action, JACE notified the insurance companies. Id. at ¶¶ 28-31. Each insurance company refused to provide a defense or to indemnify JACE under its respective policy. Id.

**II.     Standard of Review**

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

**III.    Discussion**

The insurance companies move to dismiss JACE's Complaint [#1-1] on the ground that they have no duty to defend against or indemnify an abuse of process claim. They assert that the personal and advertising injury coverage for malicious prosecution claims included in each of the policies does not cover the abuse of process claim, as abuse of process and malicious prosecution are distinct torts. JACE counters that the term "malicious prosecution" is ambiguous, and a

5

reasonable insured would believe that it encompassed abuse of process claims; therefore, the court should resolve the issue in favor of coverage.

    A.    *Construction of Insurance Contracts*

Under Massachusetts law,

> the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.

Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146, 461 N.E.2d 209 (1984) (quoting Sterilite Corp. v. Cont'l Cas. Co., 17 Mass. App. Ct. 316, 318, 458 N.E.2d 338 (1983)). The absence of an explicit cause of action covered by the policy is not dispositive; the issue is whether the allegations in the underlying complaint can be reasonably read as a covered claim. See Glob. NAPs, Inc. v. Fed. Ins. Co., 336 F.3d 59, 62 (1st Cir. 2003).

    In construing insurance contracts, courts are guided by ordinary principles of contract interpretation. Metro. Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 362, 951 N.E.2d 662 (2011) (quoting Boston Gas Co. v. Century Indem. Co., 454 Mass. 337, 355, 910 N.E.2d 290 (2009)). As such, it is for the court to decide whether a contractual provision is ambiguous. See Freelander v. G. & K. Realty Corp., 357 Mass. 512, 516, 258 N.E.2d 786 (1970). In making that determination, the court looks to the plain language of the insurance contract. Id. "[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466, 645 N.E.2d 1165 (1995). Rather, "[a] term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Citation Ins. Co. v. Gomez, 426 Mass. 379, 381, 688 N.E.2d

951 (1998) (quoting Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475, 503 N.E.2d 474 (1987)).

Where ambiguity exists, a court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Boston Gas, 454 Mass. at 356 (quoting A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 518, 838 N.E.2d 1237 (2005)). Any ambiguities in an insurance policy "are interpreted against the insurer who used them and in favor of the insured." Id. (quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628, 871 N.E.2d 418 (2007)). However, where the language is clear and unambiguous, the language must be given its plain and ordinary meaning, and the contract must be enforced according to its terms. Freelander, 357 Mass. at 516.

B. *Policy Language*

Under the four policies at issue, the insurers agreed to provide coverage for amounts that the insured must pay as a result of "personal and advertising injury." See e.g., Landmark CGL Policy 34-35 [#1-1]. Specifically, the policies state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply.

Id. As defined in the policies, "personal and advertising injury" arises out of a list of enumerated offenses, including "malicious prosecution." Id. at 43. The term "malicious prosecution" is not defined.

JACE claims that the malicious prosecution provision should be read to cover abuse of process claims where malicious prosecution and abuse of process are "companion torts" that share a common origin and aim, have overlapping elements of proof and are often confused with

7

each other, even within the legal community itself." Pls' Opp. 8 [#30]. JACE urges the court to consider the reasonable expectations of the insured in light of this ambiguity and to conclude that such reasonable expectations would encompass coverage for abuse of process claims. Id. at 10-13.

Massachusetts courts have long distinguished between the torts of abuse of process and malicious prosecution. See, e.g., Malone v. Belcher, 216 Mass. 209, 211, 103 N.E. 637 (1913). A malicious prosecution claim requires a plaintiff show "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314, 318, 572 N.E.2d 7 (1991)). By contrast, the elements of abuse of process are that (1) "process" was used, (2) for an ulterior or illegitimate purpose, (3) resulting in "damage." See Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636, 925 N.E.2d 513 (2010).

Contrary to JACE's argument, the First Circuit has thus held in a similar case that "[t]he long common law history of 'malicious prosecution' undermines the ordinary meaning construction." Glob. NAPs, 336 F.3d at 63. The First Circuit concluded that it was "hardly unreasonable for a drafter of an insurance instrument policy, or any other instrument, to expect that a legal term"—specifically "malicious prosecution"—"used in the policy w[ould] be accorded the meaning that the courts have given it." Id. at 63-64 (quoting Open Software Found. v. United States Fid. & Guar. Co., No. Civ. A. 98–11177–GA, 2001 WL 1298878 at *7 (D. Mass. Aug.16, 2001)). And the Massachusetts Appeals Court has similarly held that related but distinct legal claims should not be conflated for purposes of insurance coverage. See Robbins v.

8

Hingham Mut. Fire Ins. Co., 91 Mass. App. Ct. 1108, 79 N.E.3d 1112 (2017) (concluding that slander and slander of title are distinct legal claims and that insurance coverage for slander did not extend to coverage for the related tort of slander of title).

JACE's argument also runs counter to the plain language of the policies, which list a limited set of enumerated offenses that constitute "personal and advertising injury." Malicious prosecution is included; abuse of process is not. "The express inclusion of the related, though distinct, tort of malicious prosecution in the [insurance policies], without a parallel inclusion of abuse of process, is corroborative of a contractual determination not to cover abuse of process claims." Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 373 n.2 (D. Mass. 2015). Nor is it the case that the lack of a definition of a term in an insurance policy renders that term ambiguous. 11 Williston on Contracts § 30:4 (4th ed.) ("ambiguity does not necessarily exist simply because a contract requires interpretation or fails to define a term, and the failure to include more express language of the parties' intent does not create an ambiguity in the contract when only one reasonable interpretation exists").

JACE relies on several cases in which courts have reached the opposite conclusion. The first, Lunsford v. Am. Guarantee & Liab. Ins. Co., 18 F.3d 653, 655-56 (9th Cir. 1994), held that "the distinction between malicious prosecution and abuse of process is at best unclear" and that "given the overlap between malicious prosecution and abuse of process," such ambiguity should be resolved in favor of coverage. Several other cases cited by JACE echo this logic. But given Massachusetts' "long common law history" of distinguishing between the two and the First Circuit's clear guidance, Glob. NAPs, 336 F.3d at 63-64, that argument is unconvincing.

Other cases cited by JACE are similarly unpersuasive. In Nw. Nat. Cas. Co. v. Century III Chevrolet, Inc., the court was concerned not with whether the term "malicious prosecution"

encompassed abuse of process claims but with whether it included both common law and statutory claims, where a Pennsylvania statute had supplanted the common law cause of action. 863 F. Supp. 247, 250 (W.D. Pa. 1994). In Toll Bros. v. Gen. Accident Ins. Co, a Delaware court applied Pennsylvania law and concluded that the "the term 'malicious prosecution' would cover actions deriving from abuse of process." 1999 WL 744426 (Del. Super. Aug. 4, 1999). More recently, however, courts analyzing Pennsylvania law have concluded that "beyond some historical confusion about the distinction between malicious prosecution and abuse of process," there is no "recent or local authority that supports the proposition that a [p]olicy provision referencing 'malicious prosecution' might be ambiguous with respect to whether it extends to abuse of process claims." Westminster American Insurance Co. v. Spruce 1530, LLC, 2020 WL 3288193, at *8 (E.D. Pa. June 17, 2020), aff'd, 2021 WL 1043086 (3d Cir. Mar. 18, 2021). And in reviewing Wisconsin law, the court in Heil Co. v. Hartford Accident & Indem. Co. concluded that "recent Wisconsin Supreme Court and appellate court decisions have implicitly rejected the rationale utilized in [Koehring Co. v. Am. Mut. Liab. Ins. Co., 564 F. Supp. 303 (E.D. Wis. 1983)]," another case cited as support by JACE. 937 F. Supp. at 1363 n.4.

In sum, where the policy language is unambiguous, the court concludes that "malicious prosecution" in the policies does not encompass abuse of process claims. The court further declines to certify the question to the Massachusetts Supreme Judicial Court where the First Circuit has clearly held that "malicious prosecution" should "be accorded the meaning that the courts have given it." Glob. NAPs, 336 F.3d at 63-64.

C. *Insurance Companies' Duty to Defend*

477 Harrison's complaint does not contain a claim for malicious prosecution. As noted above, however, "the absence of any explicit claim for malicious prosecution in the [underlying]

complaint is not dispositive"; the issue is whether the allegations can be reasonably read to state a claim for malicious prosecution. Id. at 62. Here, however, JACE makes no argument that the allegations "adumbrate" a claim for malicious prosecution, triggering the insurance companies' duty to defend. Consequently, the insurance companies do not owe JACE a duty to defend. And where there is no duty to defend, nor is there duty to indemnify or a breach of contract. See Bagley v. Monticello Ins. Co., 430 Mass. 454, 459, 720 N.E.2d 813 (1999) ("If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify").

IV. Conclusion

For the forgoing reasons, the insurance companies' Motions to Dismiss [#18, #21, #23, #26] are GRANTED, and JACE's Cross-Motion for Certification to the Supreme Judicial Court [#30] is DENIED.

IT IS SO ORDERED.

December 1, 2021                                               /s/ Indira Talwani
                                                               United States District Judge